IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EXETER FINANCE CORP.,

    Plaintiff,

      v.

EUREKA INC.
doing business as
Roswell Mitsubishi,

    Defendant.

CIVIL ACTION FILE
NO. 1:16-CV-1572-TWT

**OPINION AND ORDER**

This is a breach of contract action. It is before the Court on the Plaintiff Exeter Finance Corporation's Motion for Summary Judgment [Doc. 78]. For the following reasons, the Plaintiff's Motion for Summary Judgment [Doc. 78] is GRANTED.

**I. Background**

The Plaintiff, Exeter Finance Corporation, is a lender that makes subprime automobile loans which are originated by automobile dealers.[1] It does so by effectively purchasing the car loans from the dealers.[2] The Defendant, Eureka, Inc.,

---

[1]     Pl.'s Statement of Undisputed Material Facts ¶ 1 ("SOF").

[2]     *Id.*

is a Georgia corporation that does business as Roswell Mitsubishi, an auto dealer that has sold many loans to Exeter.[3] On February 24, 2014, Exeter and Eureka entered into a Non-Recourse Dealer Agreement that set forth the parties' rights and responsibilities regarding any loans that Eureka sold to Exeter.[4] In Section 10 of the Agreement, Eureka made a series of representations and warranties. Most relevant for this case, Eureka warrantied that:

> **c. Good Title, Vehicle Delivery and Assignment.** (i) Dealer has good and marketable title to the Vehicle...
>
> **d. Title, Security Interest and Lien.** (i) Dealer shall cause an application for title of the Vehicle that is the subject of the contract to be submitted to the appropriate government agency within the time periods required by applicable law … (ii) Dealer shall take all steps necessary to ensure that Exeter will have a valid and properly perfected first priority security interest in such Vehicle and that such lien shall be enforceable.
>
> . . . .
>
> **o. Fraud.** (i) Possession of the Vehicle was not obtained by Buyer's use of a fraudulent scheme, trick or device and (ii) sale of the RIC to Exeter was not affected by Dealer's use of any fraudulent scheme, trick or device. [5]

---

[3]  *Id.* at ¶ 2.

[4]  *Id.* at ¶ 3.

[5]  Dealer Agreement § 10 [Doc. 78-1].

Eureka also agreed that if any of these warranties were breached, it would buy back the loans from Exeter at the "repurchase price."[6] The Agreement defined the repurchase price as the "then remaining unpaid amounts owing with respect to such Contract, including, without limitation, all unpaid principal, all accrued and unpaid interest and all other amounts due and payable . . . ."[7]

Over the course of the Agreement, Exeter purchased dozens of car loans from Eureka.[8] Exeter alleges that on at least four of these loans, Eureka failed to provide Exeter with good title to the vehicle or to perfect Exeter's security interest.[9] On another six loans, Exeter alleges that the borrowers used fraudulent social security numbers on their applications and that the loans subsequently went into default.[10] Exeter demanded that Eureka repurchase all ten of these loans. Eureka failed to do so, and Exeter filed the instant action seeking the total repurchase value of the contracts.[11] Exeter now moves for summary judgment on its claims for breach of contract.

---

[6] *Id.* at § 12.

[7] *Id.* at § 1(j).

[8] SOF ¶ 8.

[9] *Id.*

[10] *Id.* at ¶ 12.

[11] *Id.* at ¶¶ 9, 13.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[12] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[13] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[14] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[15] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[16]

## III. Discussion

Eureka does not dispute that it sold loans to Exeter, nor does it dispute that some of them may have breached its Agreement with Exeter. Eureka's entire argument

---

[12] FED. R. CIV. P. 56(a).

[13] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

[16] *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

is that it has not had enough time in discovery to be able to effectively respond. Now that discovery is over, this argument is unavailing, as Eureka never filed a motion pursuant to Rule 56(d).[17] Eureka having offered no other arguments to contradict the Plaintiff's evidence, the Court finds that the Defendant breached the Agreement with the Plaintiff by failing to repurchase the ten loans after the loans were found to have violated the express warranties contained in the Agreement. As such, the Plaintiff is entitled to summary judgment on its breach of contract claims, including damages in the amount of $267,597.00,[18] as well as attorneys' fees.[19]

## IV. Conclusion

For the reasons stated above, the Plaintiff's Motion for Summary Judgment [Doc. 78] is GRANTED.

---

[17] Fed. R. Civ. P. 56(d).

[18] The repurchase price was $127,659.00 for the four loans lacking good title, and $139,938.00 for the six loans that were fraudulently obtained using false social security numbers. *See* Cahill Dep., at ¶¶ 14-15 [Doc. 78-1]. The Court acknowledges that the Plaintiff has mistakenly referenced different prices than those cited above in both its Brief and Statement of Undisputed Material Facts. However, the numbers cited here by the Court are the repurchase prices reflected in the underlying evidence submitted by the Plaintiff.

[19] The Agreement gives Exeter the right to recover attorneys' fees. *See* Dealer Agreement § 15 [Doc. 78-1]. Texas law, which governs the Agreement, enforces these types of clauses. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8); Dealer Agreement § 21(e) [Doc. 78-1].

SO ORDERED, this 3 day of November, 2017.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge